Opinion issued December 15, 2005











In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00454-CR
NO. 01-04-00455-CR




ARTHUR EARL STERNS, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 263rd District Court
Harris County, Texas
Trial Court Cause Numbers 981358 & 981356 




MEMORANDUM OPINION

            Appellant, Arthur Earl Sterns, was convicted by the same jury of aggravated
assault in cause numbers 981356 and 981358. See Tex. Pen. Code Ann. §§ 22.01(a),
22.02(a) (Vernon Supp. 2005). In each case, the jury found an enhancement
paragraph true and assessed appellant’s punishment at 35 years’ confinement with the
sentences to run concurrently. Appellant raises five identical points of error for cause
numbers 981356 and 981358, arguing that (1) the trial court erred in overruling his
Batson objection; (2) the evidence was legally and factually insufficient to prove that
he used a deadly weapon; and (3) the evidence was legally and factually insufficient
to sustain his conviction. Appellant raises two additional points of error in cause
number 981358, arguing that the evidence was legally and factually insufficient to
sustain his conviction because of a material variance between the indictment and the
evidence introduced at trial. 
          We affirm.
Background
          Appellant’s convictions stem from aggravated assaults against his wife,
Courtney Sterns (cause number 981358), and her sister, Shalandra Adams (cause
number 981356). Appellant married Sterns in 1999. By the summer of 2003, their
marriage had become strained. On August 2 of that year, appellant and Sterns
discussed the possibility of Sterns moving out of the home they shared with an
unrelated third party, Queanatrika Washington. With the issue apparently unresolved,
Sterns left for work, leaving appellant at home with their four-year-old daughter and
Washington. Appellant then moved the majority of the furniture out of the home,
without Sterns’s knowledge, and departed. 
          When Sterns came home and learned that appellant had moved the furniture out
of their home, she decided to take her remaining belongings to her mother’s nearby
residence. Before she could begin doing this, appellant returned. He appeared angry
and demanded that Sterns give him her wedding ring, which she refused to do. 
During this confrontation, Sterns observed appellant with a straightedge razor that she
described as being U-shaped with a folding blade. When appellant left, Sterns ran to
her mother’s house.
          Shortly thereafter, Sterns returned home in order to gather her belongings. 
Adams and her one-year-old son accompanied Sterns. After Sterns locked all doors,
they packed Stern’s belongings and called a cab to drive them back to their mother’s
house. As they waited for the cab to arrive, appellant began knocking loudly on the
back door, demanding that Sterns let him in the house. Sterns refused to open the
door for appellant, fearing that he was going to harm her. Appellant continued to
knock at the door for approximately five minutes, appearing to depart after Sterns told
him that she was about to phone the police. 
          The cab arrived moments after appellant had ceased knocking on the door. 
Adams and Washington opened the front door and looked for appellant. Not seeing
him, they began carrying Sterns’s belongings to the cab. As Adams neared the cab,
appellant approached and punched her in the arm.


 Appellant then ran toward the
house, with Adams following closely behind because she feared for the safety of her
son, who remained inside. As Adams neared the door, appellant turned and cut her
in the face with the straightedge razor. Appellant then confronted Sterns, yelling
“you bitch,” and dug the blade into her face. Sterns struggled with appellant, who at
one point placed the blade at her throat. 
          Attempting to protect her sister, Adams climbed onto appellant’s back, and the
two began to struggle. Adams then ran to the telephone and called 911. While she
was on the telephone with the dispatcher, appellant grabbed the phone out of her
hands and the two again began to struggle. Sterns then ran from the house and was
taken to the hospital by the cab driver. After appellant fled, Adams ran from the
house. She was picked up by an ambulance and taken to the hospital. Adams
sustained a wound to her face that required two layers of stitches to close. Sterns
sustained wounds to her chest and face, the latter requiring three layers of stitches to
close. Both Sterns and Adams have permanent facial scars as a result of appellant’s
assault. 
AnalysisA. Appellant’s Batson Complaint
          In his first point of error in both cause numbers, appellant argues that the trial
court erred in failing to discharge the jury panel pursuant to his Batson challenge. 
 
1. Standard of Review
          We will reverse a trial court’s ruling on a Batson challenge only if it appears
clearly erroneous. See Whitsey v. State, 796 S.W.2d 707, 726 (Tex. Crim. App.
1989). In applying this standard, we will not reverse the trial court’s ruling unless we
have a definite and firm conviction that a mistake has been made. See id. We view
the evidence in the light most favorable to the trial court’s ruling, and review the
record in its entirety, including the voir dire process, the racial constitution of the
venire, the State’s race- neutral explanations, and appellant’s rebuttal and impeaching
evidence. See id. 
2. Batson 
          Using a peremptory challenge based on a veniremember’s race violates the
United States Constitution’s Equal Protection Clause. Batson v. Kentucky, 476 U.S.
79, 86, 106 S. Ct. 1712, 1717 (1986). A Batson challenge consists of three prongs:
(1) the defendant must make a prima facie case that peremptory strikes were used to
dismiss veniremembers on the basis of their race; (2) if the defendant establishes a
prima facie case, the State must provide racially neutral explanations for its
challenged strikes; and (3) the defendant must establish that the State’s racially
neutral explanations are pretexts for purposeful discrimination. Id. 476 U.S. at
97–98, 106 S. Ct. at 1723–24. The burden of persuasion remains with the defendant
throughout the challenge. See Jasper v. State, 61 S.W.3d 413, 422 (Tex. Crim. App.
2001). A finding that any peremptory strikes were racially motivated invalidates the
jury selection process, and a new trial is required. See Whitsey, 79 S.W.2d at 716. 
3. Appellant’s Batson Challenge
          Appellant essentially argues that the trial court erred in concluding that he did
not succeed in making a prima facie case that the State used peremptory strikes based
on race. To establish a prima facie case, appellant must show that (1) he is a member
of a cognizable racial group; (2) the prosecution exercised its peremptory strikes to
exclude members of a minority from the venire; and (3) these facts and other
circumstances give rise to an inference of discrimination. Batson, 476 U.S. at 96, 106
S. Ct. at 1723. 
          Here, appellant failed to show that the State exercised its peremptory strikes
to remove members of a minority group from the venire. When asked by the trial
court whether he had any objections to the jury prior to its being sworn, appellant’s
counsel stated, “I know that there were no black jurors that are seated on this jury,
they were struck from the panel for various reasons. And at this time I would move
to strike the jury, basis I don’t think my client can get a fair trial.” Appellant never
alleged or showed that the State used its peremptory strikes to remove African-Americans from the venire on the basis of race, and the record contains no evidence
to suggest that it did. In view of this, we cannot say that the trial court was clearly
erroneous in finding that appellant failed to establish a prima facie case in his Batson
challenge. 
          We overrule appellant’s first point of error in both causes. 
          B. Appellant’s Legal and Factual Sufficiency Complaints 
          In his remaining points of error, appellant raises issues related to the legal and
factual sufficiency of the evidence. Before addressing appellant’s respective claims,
we first discuss the applicable standards of review.
1. Standard of Review 
          We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine whether any rational fact finder could
have found the essential elements of the crime beyond a reasonable doubt. Wesbrook
v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000); King v. State, 29 S.W.3d 556,
562 (Tex. Crim. App. 2000). Although our analysis considers all evidence presented
at trial, we may not re-weigh the evidence and substitute our judgment for that of the
fact finder. King, 29 S.W.3d at 562. 
          We begin a factual sufficiency review with the presumption that the evidence
supporting the jury’s verdict is legally sufficient. Clewis v. State, 922 S.W.2d 126,
134 (Tex. Crim. App. 1996). We view all of the evidence in a neutral light, and we
will set the verdict aside only if the evidence is so weak that the verdict is clearly
wrong and manifestly unjust, or the contrary evidence is so strong that the standard
of proof beyond a reasonable doubt could not have been met. Escamilla v. State, 143
S.W.3d 814, 817 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144 S.W.3d 477,
483 (Tex. Crim. App. 2004)). Our evaluation may not intrude upon the fact finder’s
role as the sole judge of the weight and credibility to be accorded any witness’s
testimony. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). What weight
to give contradictory testimonial evidence is within the sole province of the fact
finder because it turns on an evaluation of credibility and demeanor; the fact finder
may choose to believe all, some, or none of the testimony presented. Id. at 407–09. 
We must defer appropriately to the fact finder to avoid substituting our judgment for
its judgment. Zuniga, 144 S.W.3d at 481–82. 
2. Use of a Deadly Weapon
          In his second and third points of error in both cause numbers, appellant argues
that the evidence was legally and factually insufficient to show that he used and
exhibited a deadly weapon. 
          The indictments alleged that appellant “us[ed] and exhibit[ed] a deadly
weapon, namely a cutting instrument,” during his assault of Adams and Sterns. 
Essentially tracking the indictment, the jury charge in both causes stated, “A person
commits the offense of aggravated assault if the person commits assault . . . and the
person uses or exhibits a deadly weapon during the commission of the assault.” See
Tex. Pen. Code Ann. § 22.02(a)(2). Thus, to obtain a conviction for aggravated
assault, the State was required to prove beyond a reasonable doubt that appellant used
or exhibited a deadly weapon while assaulting Adams and Sterns. 
          A deadly weapon is defined as “anything that in the manner of its use or
intended use is capable of causing death or serious bodily injury.” See Tex. Pen.
Code Ann. § 1.07(a)(17)(B) (Vernon Supp. 2005).


 Like a knife, a straightedge razor
is not considered a deadly weapon per se. See Garcia v. State, 17 S.W.3d 1, 4 (Tex.
App.—Houston [1st Dist.] 1999, pet. ref’d) (holding that a knife is not a deadly
weapon per se). As with a knife, however, a straightedge razor may qualify as a
deadly weapon based on the nature of its use or intended use. In determining whether
or not a given cutting instrument is a deadly weapon, we consider the following
factors: (1) the size, shape, and sharpness of the instrument; (2) the manner of its use
or intended use; (3) the nature or existence of inflicted wounds; and (4) testimony
about the instrument’s life-threatening capabilities. Id. (applying factors one through
four to a knife). These factors need not be proved by introducing the cutting
instrument into evidence or by expert testimony. See Morales v. State, 633 S.W.2d
866, 868 (Tex. Crim. App. 1982) (holding that a weapon can be found to be deadly
without having been introduced into evidence); Davidson v. State, 602 S.W.2d 272,
273 (Tex. Crim. App. 1980) (holding that expert testimony is not required to establish
that a weapon is deadly). 
          Here, Sterns testified that appellant used and exhibited a U-shaped straightedge
razor with a folding blade. Similar types of razors have been held to be deadly
weapons. See Lisai v. State, 875 S.W.2d 35, 38 (Tex. App.—Texarkana 1994, pet.
ref’d). Sterns further testified that she feared for her life and that appellant placed the
razor to her throat. Both Sterns and Adams testified that appellant slashed their faces,
and each complainant required multiple layers of stitches to close facial wounds that
have resulted in permanent scarring. Moreover, Officer Larue, of the Houston Police
Department, testified that the weapon used to assault Sterns and Adams was capable
of causing serious bodily injury or death. In view of this, we conclude that a rational
fact finder could have found that appellant assaulted Adams and Sterns with a
straightedge razor capable of causing death or serious bodily injury. 
          Appellant’s argument largely rests on the fact that the razor itself was never
recovered by the police


 or described with precise particularity by the complainants
or Larue. As noted, however, Sterns did provide a description of the weapon, and
Larue testified that, after observing Adams’ and Sterns’ wounds, he concluded that
the instrument responsible for them was capable of causing death or serious bodily
injury. Our evaluation may not intrude upon the fact finder’s role as the sole judge
of the weight and credibility to be accorded any witness’s testimony. Cain, 958
S.W.2d at 407.
          We conclude that the evidence was both legally and factually sufficient to
support the jury’s finding that appellant used or exhibited a deadly weapon while
assaulting Adams and Sterns. 
          We overrule appellant’s second and third point of error in both causes. 
3. Sufficiency of Evidence to Sustain Conviction
           In his third and fourth points of error in both cause numbers, appellant argues
that the evidence was legally and factually insufficient to sustain his conviction. 
Specifically, appellant asserts that the testimony of the complainants was contradicted
by physical evidence, namely blood splatter on the interior walls of the home, and
avers that only his own version of events is consistent with the physical evidence. 
          A person commits assault if he intentionally or knowingly (1) causes bodily
injury to another or (2) threatens another with imminent bodily injury. See Tex. Pen.
Code Ann. § 22.01(a) (Vernon Supp. 2005). Aggravated assault occurs when a
person (1) causes serious bodily injury to another or (2) uses or exhibits a deadly
weapon during the commission of the assault. See id. § 22.02(a).
          Here, Sterns testified that as appellant knocked on the back door, attempting
to gain entrance to the home, she feared for her safety. Shortly thereafter, appellant
attacked Adams with a straightedge razor. He then turned the razor on Sterns, after
cursing at her. Both complainants testified that these initial confrontations took place
at or near the front door of the home. Conversely, appellant testified that Sterns
attacked him at the back of the house as he returned home. Because evidence of
blood splatter was found on a wall near the back of the house, approximately eight
to ten feet from the front entrance, appellant contends that only his version of events
accurately accounts for the blood splatter. 
          Appellant, however, neglects to account for testimony indicating that the
struggle between the complainants and appellant moved from the front entrance of
the home into the living room, and thus closer to the back wall found to contain blood
splatter. Sterns testified that she struggled with appellant in the living room after he
initially attacked her. Adams testified that she struggled with appellant inside the
home while attempting to call 911. Washington, who observed the struggle between
the complainants and appellant through a living room window, further corroborated
the testimony of Sterns and Adams regarding their struggles with appellant inside the
home. Based on the testimony of Sterns, Adams, and Washington about the mobile
nature of the complainants’ encounter with appellant, we conclude that the blood
splatter evidence did not preclude a rational fact finder from concluding that appellant
was guilty of aggravated assault. 
          We further note that it is within the sole province of the jury to evaluate
contradictory testimonial evidence. Cain, 958 S.W.2d at 407–09. Appellant
presented his version of events at trial, notably omitting any plausible explanation as
to how the complainants could have sustained such severe wounds. The jury chose
not to believe appellant. We observe nothing in the record to suggest that the jury’s
rejection of appellant’s version of events was clearly wrong or manifestly unjust. 
Escamilla, 143 S.W.3d at 817. 
          We overrule appellant’s fourth and fifth points of error as to both causes. 
4. Cause Number 981358: Appellant’s Variance Complaint 
          In cause number 981358, appellant raises two additional points of error,
arguing that the evidence is legally and factually insufficient to sustain his conviction
because of a material variance between the indictment and the evidence introduced
at trial. 
          A variance occurs when there is a discrepancy between the wording in the
indictment and the evidence presented at trial. See Gollihar v. State, 46 S.W.3d 243,
246 (Tex. Crim. App. 2001). When an appellant argues that the evidence presented
at trial is inconsistent with the indictment, the Court of Criminal Appeals has held
that only a “material” variance will require reversal. Id. at 257. A variance’s
materiality hinges on “whether the indictment, as written, informed the defendant of
the charge against him sufficiently to allow him to prepare an adequate defense at
trial, and whether prosecution under the deficiently drafted indictment would subject
the defendant to the risk of being prosecuted later for the same crime.” Id. at 248
(quoting United States v. Sprick, 233 F.3d 845, 853 (5th Cir. 2000)). 
          The indictment in cause number 981358 reads, in pertinent part, “the
defendant, heretofore on or about August 2, 2003, did then and there unlawfully,
intentionally, and knowingly threaten Courtney Sterns . . . with imminent bodily
injury by using and exhibiting a deadly weapon, namely, a cutting instrument.” The
jury charge tracked the indictment. Appellant contends that the evidence at trial
showed that appellant attacked Sterns, not that he intentionally or knowingly
threatened her. This variance, according to appellant, requires reversal of his
conviction. We disagree. 
          Reversal is required only in the case of a material variance. See Gollihar, 46
S.W.3d at 257. Here, there is no indication in the record to suggest that the
indictment did not provide sufficient notice for appellant to prepare an adequate
defense at trial. Appellant was faced with dual indictments, both relating to his
assaultive conduct against Sterns and Adams on August 2, 2003. Appellant knew that
his trial would revolve around the events of that day. Under these circumstances,
appellant received sufficient notice of the charges against him, as evidenced by the
vigorous defense he conducted. Additionally, appellant is in no danger of being
prosecuted later for the same assault against Sterns. See United States v. Apodaca,
843 F.2d 421, 430 n. 3 (10th Cir. 1988) (holding that the entire trial record, not just
the indictment, may be referred to in protecting against double jeopardy in the event
of subsequent prosecution). Thus, because no material variance occurred, appellant
is not entitled to a reversal of his conviction. 
          Finally, we note that although appellant’s variance claim fails because of a lack
of materiality, there was sufficient evidence introduced at trial to convict him of
“intentionally and knowingly threaten[ing] Courtney Sterns with imminent bodily
injury.” A threat may be communicated by action or conduct as well as words. Horn
v. State, 647 S.W.2d 283 (Tex. Crim. App. 1983). Here, appellant confronted Sterns
by (1) rushing to her front door; (2) directly facing her; (3) cursing at her; and (4)
only moments later, slashing her with a straightedge razor. After the initial assault,
appellant continued both to curse and to slash Sterns. The sum of these actions
constitutes sufficient evidence, both legally and factually, to convict appellant of
intentionally and knowingly threatening Sterns with imminent bodily injury. 
          We overrule appellant’s sixth and seventh points of error for cause number
981358.Conclusion 
          We affirm the judgment of the trial court. 

                                                             Evelyn V. Keyes 
                                                             Justice
 
Panel consists of Justices Taft, Keyes, and Hanks.
Do not publish. Tex. R. App. P. 47.2(b).